ROBERT E. STANTON *vs.* AM GENERAL CORPORATION.

No. 98-P-2055.

Middlesex. March 10, 2000. - September 26, 2000.

Present: ARMSTRONG, C.J., PERRETTA, & BECK, JJ.

*Jurisdiction,* Personal, Nonresident, Long-arm statute.

An Indiana corporation's isolated transaction in Massachusetts was insufficient
to constitute transacting business under the long-arm statute, G. L. c. 223A,
§ 3(*a*), or under G. L. c. 223, §§ 37 and 38, and an action brought by a
Massachusetts plaintiff for injuries received near a loading dock in Indiana
was correctly dismissed for want of personal jurisdiction over the defendant
corporation. [118-121]

CIVIL ACTION commenced in the Lowell Division of the District
Court Department on November 20, 1995.

A motion to dismiss was heard by *Michael T. Stella, Jr.,* J.

*Gary M. Horwitz* for the plaintiff.

*Thomas A. Pursley* for the defendant.

BECK, J. In January, 1995, Robert E. Stanton, a self-employed
independent trucker living in Massachusetts, was injured when
he slipped on ice and fell near a loading dock at a manufactur-
ing plant of the defendant, AM General Corporation (AM
General), in Mishawaka, Indiana. Ten months later, he filed a
complaint in the Lowell District Court claiming that the
defendant "failed to maintain the [Mishawaka] premises in a
safe condition." Stanton served AM General through a registered
agent for service of process in Indianapolis. AM General
answered and moved to dismiss the complaint for lack of
personal jurisdiction and forum non conveniens. Mass.R.Civ.P.
12(b)(2), 365 Mass. 754 (1974). A District Court judge denied
the motion. After the Appellate Division dismissed AM
General's appeal as premature, the District Court allowed AM
General's request to report the question to the Appellate
Division. Dist./Mun.Cts.R.A.D.A. 5 (1994). The Appellate Divi-

sion ruled that Stanton had failed to establish that AM General's contacts with Massachusetts were sufficient to constitute transacting business under our long-arm statute, G. L. c. 223A, § 3(*a*). The plaintiff appeals from the judgment of dismissal entered pursuant to the order of the Appellate Division.

"Generally, a claim of personal jurisdiction over a nonresident defendant presents a two-fold inquiry: (1) is the assertion of jurisdiction authorized by statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution?" *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 5-6 (1979). Our long-arm statute authorizes "[our] court[s] [to] exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth." G. L. c. 223A, § 3(*a*). "The question what activities constitute the transaction of business . . . must be decided on the particular facts involved." *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. 149, 156-157 (1978). "While allegations of fact in an uncontroverted affidavit must be accepted as true for the purposes of a rule 12 motion, the plaintiff . . . [as he acknowledges] bears 'the burden of establishing sufficient facts on which to predicate jurisdiction over the defendant.' " *Carlson Corp.* v. *University of Vt.*, 380 Mass. 102, 104 n.4 (1980) (citation omitted). A court taking factual material outside the pleadings into account may treat a motion to dismiss as a motion for summary judgment. See *Spring* v. *Geriatric Authy. of Holyoke*, 394 Mass. 274, 292 (1985); *Tatro* v. *Manor Care, Inc.*, 416 Mass. 763, 765 (1994).

The factual materials before the District Court were the plaintiff's complaint; the affidavit he submitted in opposition to the motion to dismiss, which merely repeated the allegations of the bare bones complaint; the bill of lading attached to the affidavit; the defendant's answer to the complaint; and the uncontested facts in the affidavit of AM General's vice-president and general counsel. See *Nichols Assocs., Inc.* v. *Starr*, 4 Mass. App. Ct. 91, 93-94 (1976). Most of the "essential facts" were set out in the report the District Court judge forwarded to the Appellate Division. The facts are as follows.

AM General is a Delaware corporation with a principal place of business and a manufacturing facility in Indiana. AM General is not registered to do business in Massachusetts; does not

employ personnel here; does not have assets here or own property here; does not maintain an office, telephone service, or bank account here. It does, however, sell vehicles (Hummers) it manufactures to a dealership in Boston. The Boston dealership is independently owned and operated. All sales are F.O.B. Mishawaka, Indiana (although neither party makes an issue of that fact). See *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. at 157-158.

In January, 1995, AM General purchased certain component parts from the American Acoustical Company, in Holliston, Massachusetts. (The record contains no further description of the parts.) AM General contracted for the delivery of these parts with Roadway Express, the parent company of Roberts Express, both located in Akron, Ohio. Roberts Express contracted with the plaintiff to deliver the parts AM General had bought from American Acoustical. Stanton was injured, presumably while unloading his cargo, when he slipped on ice near a loading dock in Indiana.

*Discussion.* To prevail on his claim that AM General is subject to the jurisdiction of Massachusetts courts, Stanton was required to prove that AM General is doing business in Massachusetts and that his injury grew out of that business. See *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. at 6. He argues that he has met his burden by showing that AM General purchased parts in Massachusetts, "arrang[ed] for [his] engagement . . . to transport them to Indiana, and us[ed] the parts in manufacturing vehicles which it later would offer for sale in Massachusetts." He also claims "[t]here can be no doubt that [AM] General was aware when it engaged the Roadway system to transport its parts that a trucker from Massachusetts was likely to be involved in the transaction."

The primary problem with this argument is that the plaintiff has not carried his burden of establishing the necessary foundation to warrant the crucial inferences on which he relies. See *Nichols Assocs., Inc.* v. *Starr*, 4 Mass. App. Ct. at 93-94 (drawing unwarranted inferences misplaces the burden of proof). Even were we to determine that because Hummers were sold at the dealership in Boston, AM General is doing business in Massachusetts, the plaintiff has not shown that his injury grew out of that business. Stanton argues "it is reasonable to infer that some, if not all, of the parts [he was hauling] would eventually return to the Commonwealth as components of the Hummers

sold here." However, there is no evidence that the parts were used in the vehicles shipped to Boston for sale; nor is there any basis on which we could make such an inference. Indeed there is nothing in the record describing or otherwise identifying the parts. The copy of what we have referred to as the bill of lading does have spaces to indicate the "no. pieces" and the "description of articles and special remarks." The information set out under those headings is illegible; the description appears to be "Item 157320 [indecipherable letters] 85," which suggests it would not be helpful even if we could read it.

The Appellate Division's opinion states that AM General "manufactures the 'Hummer' automobile at its Indiana facility." *Stanton* v. *AM General Corp.*, No. 9439 (App. Div. N.D. Feb. 23, 1998). Although we find nothing in the factual record to support this finding, neither party disputes it. Whether AM General manufactures anything else is unknown. In sum, the plaintiff's injury cannot be said to have grown out of the defendant's relationship with the Boston dealership. Certainly it does not pass the "but for" test. See *Tatro* v. *Manor Care, Inc.*, 416 Mass. at 770 (plaintiff's reservation at hotel first step in train of events resulting in personal injury at hotel); *Connecticut Natl. Bank* v. *Hoover Treated Wood Prod., Inc.*, 37 Mass. App. Ct. 231, 234 (1994).

We next consider whether AM General's purchase of the parts from American Acoustical constituted doing business under the long-arm statute. On this issue, there is no evidence in the record that the transaction between American Acoustical and AM General was anything other than a single purchase. Compare *Sonesta Intl. Hotels Corp.* v. *Central Fla. Investments, Inc.*, 47 Mass. App. Ct. 154, 160-161 (1999) (letter by facsimile sent by defendant in Florida to plaintiff in Massachusetts initiated an ongoing relationship involving multiple contacts between the parties). There is no information about how the deal evolved, where the agreement was signed, whether American Acoustical solicited AM General's business or the other way around. See *Carlson Corp.* v. *University of Vt.*, 380 Mass. at 104-105. See also *Tatro* v. *Manor Care, Inc.*, 416 Mass. at 768 (hotel solicited business of Massachusetts conventioneers). Nor is there any evidence of the quantity or cost of the parts in question. See *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. at 4-5 (nine appraisal reports, fifty-two telephone calls, seventeen monthly invoices constituted transact-

ing business); *Connecticut Natl. Bank* v. *Hoover Treated Wood Prod., Inc.*, 37 Mass. App. Ct. at 234 (dollar volume of business warranted personal jurisdiction). This isolated transaction is insufficient to constitute doing business. See *"Automatic" Sprinkler Corp. of America* v. *Seneca Foods Corp.*, 361 Mass. 441, 444 (1972) (no jurisdiction where purchase order signed out of State and mailed to Massachusetts, letter accepting order and invoice mailed to buyer from Massachusetts, and machine delivered from Ohio to defendant's place of business in New York); *Telco Communications, Inc.* v. *New Jersey State Firemen's Mut. Benevolent Assoc.*, 41 Mass. App. Ct. 225, 229 (1996) (no jurisdiction over a New Jersey corporation with "no office or agent or other such 'presence' in Massachusetts," where agreement at issue was the first and only contractual relationship between the New Jersey defendant and plaintiff, a Rhode Island corporation with a place of business in Massachusetts). Compare *Carlson Corp.* v. *University of Vt.*, 380 Mass. at 105, 106-107 ("physically signing a contract in Massachusetts is, in literal terms, transacting business in Massachusetts, if the cause of action arises from that contract"; contract had "substantial connection with this State, based on amount of time and money involved"); *Johnson* v. *Witkowski*, 30 Mass. App. Ct. 697, 713 (1991) (trust amendment signed in Massachusetts created ongoing fiduciary relationship in this State).

Moreover, the controversy between Stanton and AM General centers on activities in Indiana. *Telco Communications, Inc.* v. *New Jersey State Firemen's Mut. Benevolent Assoc.*, 41 Mass. App. Ct. at 230. As a practical matter, the bulk of the witnesses to be called in an eventual trial might be expected to come from that State. *Ibid.* There is also a long standing concern about interpreting the long-arm statute so broadly as to lead to the "unwanted result of discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts." *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. at 9 n.14. See *New Hampshire Ins. Guaranty Assn.* v. *Markem Corp.*, 424 Mass. 344, 350 (1997); *Telco Communications, Inc.* v. *New Jersey State Firemen's Mut. Benevolent Assoc.*, 41 Mass. App. Ct. at 232. This concern is especially pointed here where there is no direct connection between the plaintiff and the defendant out-of-State corporation. The plaintiff's contract is between him and an unrelated out-of-State

carrier AM General hired. Contrary to the plaintiff's argument, AM General had no reason to know the carrier would be a Massachusetts trucker rather than say, one from Indiana or Ohio.

Given our conclusion that the plaintiff has not carried his burden of proving that AM General's conduct brings it within our long-arm statute, we need not reach the constitutional due process issue. See *International Shoe Co.* v. *Washington,* 326 U.S. 310, 316 (1945). It should be clear, however, that Stanton has not shown that AM General "purposefully avail[ed] itself of the privilege of conducting activities within [Massachusetts]," *Tatro* v. *Manor Care, Inc.,* 416 Mass. at 772 (citations omitted), as the cases require.

Finally, Stanton contends that AM General is also subject to jurisdiction in Massachusetts courts under G. L. c. 223, §§ 37 and 38. Section 38 provides that a foreign corporation is subject to service if it "is engaged in or soliciting business in the commonwealth, permanently or temporarily." The determination whether personal jurisdiction exists "is founded on the [same] two-step inquiry set forth in *Good Hope Indus., Inc.* v. *Ryder Scott Co.,* 378 Mass. at 5-6." *Campbell* v. *Frontier Fishing & Hunting, Ltd.,* 10 Mass. App. Ct. 53, 55 (1980). Given our foregoing analysis, we conclude there is no merit to the plaintiff's argument on this issue.

*Judgment affirmed.*