**Paul EDWARDS, Plaintiff,**

v.

**RADVENTURES, INC. and Works Performance Products, Inc., Defendants.**

**Civ.A. No. 00–40212–NMG.**

United States District Court, D. Massachusetts.

Sept. 13, 2001.

---

Eric J. Parker, Parker/Scheer, Boston, MA, for plaintiff.

Paul D. Williams, Deborah S. Russo, Day, Berry & Howard LLP, Hartford, CT, for defendants.

### MEMORANDUM & ORDER

GORTON, District Judge.

On the basis of diversity jurisdiction, the plaintiff, Paul Edwards ("Edwards") filed suit in federal court against defendants Radventures, Inc. ("Radventures") and Work Performance Products, Inc. ("WPP") for personal injuries arising out of Edwards' use of a product called the "Yetti Racer" monoski. The Yetti Racer monoski is allegedly manufactured by Radventures and contains "sub-component parts and sub-assemblies of [WPP]". Edwards is a member of the United States Disabled ski team and was injured while using the monoski. Edwards asserts state law claims of negligence, breach of implied warranty of merchantability and breach of warranty of fitness for a particular purpose.

Defendant Radventures has filed, pursuant to Fed.R.Civ.P. 12(b)(2), a motion to dismiss plaintiff's claims with prejudice for lack of personal jurisdiction. Edwards responds in opposition to that motion that this Court has personal jurisdiction over Radventures pursuant to the Massachusetts long-arm statute, specifically, M.G.L. c. 223A, § 3(a) and (b).

### I. Legal Standard

When challenged by the defendant, the plaintiff bears the burden of proving the existence of personal jurisdiction. *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995). In considering the defendants' motion, this Court employs the *prima facie* standard under which the Court considers whether the plaintiffs have proffered evidence that, "if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir. 1992). When determining whether a *prima facie* showing has been made, this Court does not act as a factfinder, but instead "accepts properly supported proffers of evidence by a plaintiff as true." *Id.* at 675. Therefore, "while allegations of fact in an uncontroverted affidavit must be accepted as true for the purposes of a rule 12 motion, the plaintiff ... bears the burden of establishing sufficient facts on which to predicate jurisdiction over the defendant." *Stanton v. AM General Corp.*, 50 Mass.App.Ct. 116, 117, 735 N.E.2d 407 (Mass.App.Ct.2000) (citations and internal quotations omitted).

## II. Factual Background

Because questions of personal jurisdiction involve detailed examination of the particular circumstances of each case, facts of jurisdictional significance must be set forth at some length. *Nowak v. Tak How Inv. Ltd.,* 899 F.Supp. 25, 27 (D.Mass. 1995), *aff'd,* 94 F.3d 708 (1st Cir.1996).

Plaintiff Edwards is a resident of Winchenden, Massachusetts. Defendant Radventures is an Oregon corporation with its principal place of business in Sherwood, Oregon. It was incorporated in 1991.

According to Edwards' affidavit, in December, 1997, he attended a ski event called "Ski Spectacular" in Breckenridge, Colorado. Genie and Michael Goodman, the co-owners of Radventures, allegedly approached him to discuss his purchase of a Yetti monoski. Edwards contends that at the time, he did not place an order for a monoski but Michael Goodman took his measurements for one and provided him with Radventures order information.

Edwards asserts that he placed an order for the Yetti Racer monoski in October, 1998 by faxing his new measurements and his order form to Radventures from his home in Sudbury, Massachusetts. The contract for the purchase of the monoski provided for delivery to his home but, according to Edwards, when delivery was past due he requested that the monoski be rerouted to New Hampshire for his use in training for an upcoming ski competition. Edwards contends that Radventures sent copies of the purchase order invoice and Yetti Racer monoski documents to his home in Sudbury.

According to Radventures, its records indicate that Edwards solicited the order from Radventures by telephone in July, 1998, faxed in a measurement sheet in August, 1998 from Massachusetts, and received the ski in January, 1999 when Radventures shipped it to Loon Mountain, New Hampshire. Almost immediately after receiving the monoski Edwards began to experience equipment and performance problems with it. He corresponded with the service and technical departments of Radventures, via telephone and electronic mail, on numerous occasions between December, 1998 and April, 1999, to discuss those problems.

In April, 1999 Edwards shipped from Massachusetts to Radventures in Oregon parts of his monoski seat and shock for repairs. After performing repairs on those parts, Radventures' service department shipped them back to Edwards in Massachusetts. In July, 1999, Radventures sent correspondence to Edwards in Massachusetts soliciting his purchase of a new shock for his monoski.

Edwards attended a ski event in Breckenridge, Colorado on December 6, 1999. While he assisted beginner skiers and monoskiers on a beginner ski run and operated the subject monoski, it allegedly malfunctioned, throwing him from the monoski and causing serious and permanent injuries.

Radventures contends that (1) it does not regularly solicit business or derive revenue from goods used or consumed in the Commonwealth of Massachusetts, (2) it has no offices or facilities, no agents or employees, no bank accounts, and no real or personal property in Massachusetts, (3) it is not subject to taxation in Massachusetts, (4) it has never advertised or solicited business in Massachusetts, (5) none of its agents acting on its behalf advertises or solicits business in Massachusetts and (6) it has never instituted a lawsuit in the Commonwealth nor sought the application of Massachusetts law in any lawsuit.

Radventures' sales figures indicate that since its inception in 1991, it has made sales to only six Massachusetts residents.

Of those six, one bought the ski in Colorado and carried it home to Massachusetts, while two others solicited the ski in New Hampshire. Since 1996, Radventures has made sales to individuals residing in Massachusetts in a total amount of $11,718. Those sales represented between 0.25% to 3.6% of Radventures' gross sales for those years.

Radventures' contends that its internet website did not go on-line until December, 1998, after Edwards ordered the product in question. To date that website has no on-line capacity but can only be used to submit measurement information, and orders must be made either by telephone or facsimile. Edwards asserts that the website has been operational since November 17, 1998 and that through the site, Radventures provides potential customers with the name and address of "the Massachusetts facility" along with a contact name, phone number and email address to facilitate the testing of such a monoski.

### III. Discussion

### A. Applicable Law

■ To determine whether a federal district court has jurisdiction over a nonresident defendant in a diversity suit, the court must look to the law of the forum state. *Hahn v. Vermont Law School,* 698 F.2d 48, 49 (1st Cir.1983). Under Massachusetts law, jurisdiction over a nonresident defendant is appropriate if it is both authorized by statute and consistent with the due process requirements of the United States Constitution. *Good Hope Indus., Inc. v. Ryder Scott, Co.,* 378 Mass. 1, 5–6, 389 N.E.2d 76 (1979); *Nowak v. Tak How Inv., Ltd.,* 94 F.3d 708, 712 (1st Cir. 1996).

### 1. The Massachusetts Long–Arm Statute

The Massachusetts long-arm statute provides, in relevant part, that a Massachusetts Court may exercise personal jurisdiction:

over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) transacting any business in this commonwealth [or]

(b) contracting to supply services or things in this commonwealth

M.G.L. c. 223A, §§ (a) and (b).

### a. Transaction of Business in Massachusetts

■ In order for jurisdiction to exist pursuant to § 3(a), the facts must satisfy two requirements: (1) the defendant must have transacted business in Massachusetts and (2) the plaintiff's claim must have arisen from the defendant's transaction of such business. *Tatro v. Manor Care, Inc.,* 416 Mass. 763, 767, 625 N.E.2d 549 (1994).

■ The "transacting any business" clause has been construed broadly. *Tatro,* 416 Mass. at 767, 625 N.E.2d 549. The Massachusetts Supreme Judicial Court ("SJC") has explained that

[a]lthough an isolated (and minor) transaction with a Massachusetts resident may be insufficient, generally the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement.

*Id.* Therefore, when a minor transaction is part of "a larger systematic effort to obtain business from Massachusetts businesses and residents," a foreign defendant may be deemed to have transacted business under § 3(a). *Id.* at 769, 625 N.E.2d 549.

In *Tatro,* for example, the SJC found that the acceptance by a defendant, nonresident hotel of a reservation from a Mas-

sachusetts resident by telephone constituted transacting business under the long-arm statute because that contact was part of a broader attempt to solicit business from Massachusetts. *Id.* at 768–69, 625 N.E.2d 549. Similarly, this District Court has interpreted *Tatro* to stand for the proposition that § 3(a) is satisfied "when there is persistent advertising and solicitation of business from Massachusetts residents, even if it only involves a single sale . . . ." *Digital Equip. Corp. v. AltaVista Tech., Inc.,* 960 F.Supp. 456, 465–66 n. 19 (D.Mass.1997).

■ In this case, the Court finds that Radventures transacts business in Massachusetts for purposes of § 3(a). Although Radventures is not registered to transact business in Massachusetts, has no sales offices, officers, agents or bank accounts in Massachusetts, and does not own or lease any real or personal property in the Commonwealth, it has made sales of approximately $12,000 to six Massachusetts residents over the years. Radventures has a website on the internet, operational since December, 1998, through which it solicits monoski sales and provides 44 locations across the United States where an interested person may ski on a Yetti. One such location is in Springfield, Massachusetts.

Furthermore, Edwards faxed his order and measurements for the subject monoski from Massachusetts to Radventures in Oregon.[1] He corresponded via email and telephone from Massachusetts to Radventures for a period of five months with respect to the monoski, he shipped the monoski from Massachusetts to Oregon for repairs and it was returned after those repairs were completed. Additionally, in July, 1999, Radventures sent correspondence to Edwards in Massachusetts soliciting his purchase of a new shock for his monoski.

Merely finding that Radventures transacts business in Massachusetts is not, however, enough to establish personal jurisdiction under § 3(a). *See Tidgewell v. Loon Mountain Recreation Corp.,* 820 F.Supp. 630, 631 (D.Mass.1993). Edwards must also establish that his cause of action itself arose from Radventures' transaction of business in Massachusetts, *Tidgewell,* 820 F.Supp. at 631, that is, there must be a "rational nexus" between Radventures' transaction of business and Edwards' cause of action. *See Heins v. Wilhelm,* 26 Mass.App.Ct. 14, 18, 522 N.E.2d 989 (Mass.App.Ct.1988).

The SJC has adopted a "but for" test for determining when an injury arises from the transaction of business. *Tatro,* 416 Mass. at 770–71, 625 N.E.2d 549. In *Tatro,* it held that the resident plaintiff's injuries "arose from" the California hotel's transaction of business in Massachusetts because but for (1) the hotel's solicitation of her business, and (2) the hotel's agreement to provide her with a hotel room in California, the plaintiff would not have been injured at the hotel. *Id.* at 771–72, 625 N.E.2d 549. The SJC concluded that the Massachusetts resident's in-forum act of reserving a room in an out-of-state hotel "is considered the first step in a train of events that results in personal injury." *Id.* at 770, 625 N.E.2d 549.

In this case, Edwards' in-forum act of faxing his order form and measurements to Radventures in Oregon may properly be considered "the first step in a train of events that result[ed] in [his] personal injury". Edwards subsequent correspondence with Radventures from Massachu-

---

1. The parties provide different dates for those communications but do not dispute the fact that they occurred.

setts via telephone and email regarding his problems with the monoski, and the shipment back and forth of parts for repair, further demonstrate that his claim for personal injury arose from Radventures' contacts with Massachusetts.

Radventures cites two cases in support of its argument that personal jurisdiction does not lie under § 3(a). In the first case, *Kasabuki v. Sherburne Corp.,* 1982 U.S.Dist. LEXIS 16616 (D.Mass.1982), the court dismissed the plaintiffs' suit for personal injuries stemming from an accident at the defendant's ski mountain for lack of personal jurisdiction. The court found that although the defendant maintained a small bank account in Boston and advertised and solicited business extensively in Massachusetts, the plaintiffs failed even to allege, much less make a showing, of a nexus between their alleged injuries or their presence at the defendant's ski mountain and the defendants' transaction of business in Massachusetts. *Kasabuki,* 1982 U.S.Dist. LEXIS at *3–4.

*Kasabuki* is inapposite because Edwards has made sufficient allegations that his personal injuries resulted from his purchase of a monoski, a purchase that arose out of Radventures' contact with the forum state when Edwards faxed his order form and measurements from Massachusetts to Oregon.

In the second case cited by Radventures, *Stanton v. AM General Corp.,* 50 Mass.App.Ct. 116, 735 N.E.2d 407 (Mass. App.Ct.2000), the court refused to find grounds for personal jurisdiction over a defendant who sold vehicles it manufactured to a dealership in Boston, Massachusetts. *Stanton,* 50 Mass.App.Ct. at 119, 735 N.E.2d 407. The plaintiff had been injured in Indiana while unloading parts purchased by the defendant. The court noted that even if it assumed, without specifically finding, that such sales constituted transacting business in the Commonwealth, the plaintiff had introduced no evidence to show that the parts were used in the vehicles shipped by the defendant to Boston for sale. Therefore, the court held that the plaintiff had failed to establish that his injuries grew out of the defendant's relationship with the Boston dealership. *Stanton,* 50 Mass.App.Ct. at 118–119, 735 N.E.2d 407.

*Stanton* is also unhelpful because Edwards has sufficiently alleged that his injuries arose out of Radventures' contacts with the Commonwealth, namely, its receipt of Edwards' order originating in Massachusetts, the correspondence between Massachusetts and Oregon regarding Edwards' problems with the monoski, and the shipment back and forth between Massachusetts and Oregon of monoski parts for repair.

Because this Court has already determined that personal jurisdiction exists over Radventures pursuant to § 3(a), this Court will not address the parties' arguments with respect to jurisdiction under § 3(b).

### 2. The Due Process Clause

█ The due process clause of the United States Constitution requires minimum contacts between a nonresident defendant and the forum state such that the exercise of personal jurisdiction over that defendant accords with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In analyzing minimum contacts, courts have distinguished between two kinds of personal jurisdiction: "general" and "specific". General jurisdiction exists when the litigation

is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in a

systematic activity, unrelated to the suit, in the forum state....

*United Elec. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1088 (1st Cir.1992) ("Pleasant St. I").

Specific jurisdiction, by contrast, narrows a court's focus to a "specific set of interactions as a basis for personal jurisdiction." *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 144 (1st Cir. 1995). Edwards argues broadly that this Court may properly exercise specific jurisdiction over Radventures because it has sufficient contacts with Massachusetts to make jurisdiction consistent with the due process clause.

The First Circuit utilizes a three-part analysis to determine if sufficient contacts exist to exercise specific personal jurisdiction:

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Pleasant St. I,* 960 F.2d at 1089; *see also Nowak,* 94 F.3d at 712–713.

**a. Relatedness**

Relatively speaking, the relatedness inquiry is a "flexible, relaxed standard". *Pritzker,* 42 F.3d at 60–61. Although the relatedness requirement is "the least developed prong of the due process inquiry," *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 206 (1st Cir.1994), the First Circuit has observed that it serves the important function of directing a court's attention to the nexus between a plaintiff's claim and the defendant's contacts with the forum. *Pleasant St. I,* 960 F.2d at 1089. Specifically, the relatedness requirement

is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state.

*Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir.1995). Indeed, in *Pleasant St. I,* the First Circuit explained that, at this stage of the analysis, it is important to bear in mind the nature of the plaintiff's claim and to consider whether the plaintiff's cause of action can "conceivably be said to have arisen directly from, or been caused proximately by," the defendant's contacts with the forum. 960 F.2d at 1089.

This proximate cause test requires an "arising from" analysis distinct from the "but for" analysis undertaken under the Massachusetts long-arm statute. *Nowak v. Tak How Inv. Ltd.,* 899 F.Supp. 25, 30 (D.Mass.1995), *aff'd,* 94 F.3d 708 (1st Cir. 1996). Nevertheless, in light of the flexible nature of the relatedness inquiry, the First Circuit has declined to require strict adherence to a proximate cause standard, instead applying a "small overlay of 'but for' on 'proximate cause' ". *Nowak,* 94 F.3d at 715–16. The rationale is that

[w]hen a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result. The corporation's own conduct increases the likelihood that a specific resident will respond favorably. If the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, we think the nexus

between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage.

*Id.*

In *Nowak,* the plaintiff's employer, Massachusetts-based Kiddie Products, Inc., made reservations, after a series of exchanges by telecopier, for several employees including the plaintiff and his wife, at a hotel in Hong Kong owned by the defendant. While a registered guest at the hotel, the plaintiff's wife drowned in the hotel swimming pool. *Id.* at 711. Applying the relatedness test, the First Circuit upheld the district court's finding that

> [t]he Hotel's solicitation of Kiddie's business and the extensive back-and-forth resulting in . . . [the reservation of] a set of rooms for Kiddie employees and their spouses set in motion a chain of reasonably foreseeable events resulting in Mrs. Nowak's death. The possibility that the solicitation would prove successful and that one or more of the guests staying at the Hotel as a result would use the pool was in no sense remote or unpredictable; in fact, the Hotel included the pool as an attraction in its promotional materials.

*Id.* at 716 (*quoting Nowak,* 899 F.Supp. at 31). The court concluded that, although such solicitation was not the proximate cause of Mrs. Nowak's death, it did "represent a meaningful link" to the harm suffered sufficient to maintain jurisdiction. *Id.*

■ The facts in the case at bar fall within the First Circuit's modification of the proximate cause standard for relatedness. Edwards' claims arise from Radventures' sale of an allegedly defective monoski. Radventures approached Edwards regarding such a sale in Colorado, and the sale was consummated when Edwards faxed his order form and measurements from Massachusetts to Radventures in Oregon.

### b. Purposeful Availment

The analysis of the second element of the constitutional prong of specific personal jurisdiction involves a determination of whether Radventures' contacts with the forum state represent a "purposeful availment" by Radventures of the privilege of conducting business in that state. *Ticketmaster,* 26 F.3d at 207. The cornerstones of the "purposeful availment" requirement are voluntariness and foreseeability. *Id.* The voluntariness prong ensures that the defendant's contacts with the forum state are "not based on the unilateral actions of another party or a third person". *Nowak,* 94 F.3d at 716 (*citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The foreseeability prong requires that "the defendant's contacts with the forum state be such that he should reasonably anticipate being haled into court there." *Id.* (*citing World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

In this case, Radventures' contacts with Massachusetts were voluntary and put it on notice that it could reasonably anticipate being haled into court in the Commonwealth. After accepting Edwards' order form and measurements from Massachusetts, Radventures proceeded to supply him with such a monoski and to correspond with him regarding his problems with that monoski. Radventures sent repaired parts to Massachusetts and later by mail solicited Edwards in Massachusetts to purchase of a new shock for the monoski. It is reasonably foreseeable that Radventures could be sued in Massachusetts for injuries arising out of the purchase and use of that monoski.

## c. The Gestalt Factors

The third and final stage of the personal jurisdiction analysis affords an opportunity for concepts of reasonableness to illuminate that review. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559 (1980). The Supreme Court has identified five such considerations, termed by the First Circuit, "the gestalt factors": (i) the defendant's burden of appearing, (ii) the forum state's interest in adjudicating the dispute, (iii) the plaintiff's interest in obtaining convenient and effective relief, (iv) the judicial system's interest in obtaining the most effective resolution of the controversy, and (v) the common interests of all sovereigns in promoting substantive social policies. *Pleasant St. I,* 960 F.2d at 1088 (*citing Burger King Corp.,* 471 U.S. at 477, 105 S.Ct. 2174).

### (i) The Defendant's Burden of Appearance

It would undoubtedly cause Radventures, located in Oregon, some burden to defend itself in Massachusetts. The First Circuit "has recognized, however, that it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction". *Nowak,* 94 F.3d at 718. Thus, for this particular gestalt factor to have any significance, a defendant must show that the exercise of jurisdiction is "onerous in a special, unusual, or other constitutionally significant way". *Id.* (*quoting Pritzker,* 42 F.3d at 64). Radventures has failed to so demonstrate in this case.

### (ii) The Form State's Adjudicatory Interest

Although Edwards' injury occurred in Colorado, significant events leading up to that injury took place in Massachusetts, thus giving Massachusetts an interest in the instant litigation. *Nowak,* 94 F.3d at 718. The First Circuit has noted that

> Massachusetts has a strong interest in protecting its citizens from out-of-state solicitations for goods or services that prove to be unsafe, and it also has an interest in providing its citizens with a convenient forum in which to assert their claims.

*Id.* (*citing Burger King Corp.,* 471 U.S. at 473, 105 S.Ct. 2174). Accordingly, this factor weighs in Edwards' favor.

### (iii) The Plaintiff's Convenience

This Court must accord deference to the plaintiff's choice of forum. *Nowak,* 94 F.3d at 718. Furthermore, a Massachusetts forum is obviously more convenient for Edwards than an Oregon forum. This gestalt factor therefore also cuts in favor of Edwards.

### (iv) The Administration of Justice

The fourth gestalt factor "focuses on the judicial system's interest in obtaining the most effective resolution of the controversy". *Nowak,* 94 F.3d at 718. This factor is often a wash, *see, e.g., Sawtelle,* 70 F.3d at 1395; *Ticketmaster,* 26 F.3d at 211, and that appears to be the case here as well.

### (v) Pertinent Policy Arguments

The final gestalt factor requires this Court to consider the interests of the affected forum states in substantive social policies. *Nowak,* 94 F.3d at 719. As noted earlier, Massachusetts has a clear interest in protecting its citizens from foreign providers of goods and services and in affording those citizens a convenient forum in which to bring their claims. On the other hand, Oregon no doubt has an interest in adjudicating claims relating to businesses based within its boarders.

In *Nowak,* the First Circuit found that Massachusetts' interest in protecting its

citizens slightly outweighed the interest of Hong Kong in protecting its businesses. *Id.* In the instant case, the balance similarly weighs somewhat in favor of a Massachusetts forum.

### d. Conclusion

On balance, the gestalt factors weigh in favor of the Massachusetts plaintiff. Considered together with Edwards' adequate showing on the first two prongs of the constitutional test for specific jurisdiction, this Court concludes that the exercise of its jurisdiction over Radventures is reasonable and does not offend the notions of fair play and substantial justice.

### ORDER

For the foregoing reasons, this Court's assertion of personal jurisdiction over Radventures is appropriate. Radventures' Motion to Dismiss (Docket No. 9) is, therefore, **DENIED.**

**So ordered.**