Lemire, James R., J.

INTRODUCTION

This is a civil action in which Plaintiff, Ronald Gray (“Gray”), alleges that Defendant, Michael Stapleton Associates, Ltd. (“MSA”), wrongfully converted Max, a trained explosive detecting Labrador Retriever. Gray filed a four-count (4) Verified Complaint and Jury Demand alleging conversion (Count I), restitution (Count II), unjust enrichment/quantum meruit (Count III), and c. 93A violations (Count IV). This action is now before the Court on MSA’s Motion for Summary Judgment. The court heard oral argument on December 6, 2006. For the following reasons MSA’s motion is DENIED.

FACTUAL BACKGROUND

Gray is an individual residing in North Brookfield, Massachusetts, who has a part-time business in training and selling canines for explosives and narcotics detection. MSA, a security company, is a Delaware Corporation, with a principal place of business in New York, New York. MSA is also registered as a foreign corporation in the Commonwealth, with a registered agent located in Cambridge, Massachusetts. Max is an explosive detecting Labrador Retriever, owned and licensed by Gray in Massachusetts.
Gray avers that on August 25, 2004,[1] he sent Max to Peter Davis (“Davis”) in New York City, to be trained and evaluated on trial deployments.[2] In late November or early December 2004, Gray alleges that he was telephoned in Massachusetts by John Harvey, the Director of Canine Operations for MSA, who solicited Gray for the purpose of purchasing an explosive detecting canine.[3] While Max was in the possession of Davis, he was periodically tested on trial deployments by MSA. On or about January 15, 2005, MSA took possession of Max, although Gray alleges that he owned Max at all relevant times. When Max was deemed to be performing well and was ready for deployment, Davis was advised by Kenneth Silva, an employee of MSA, to contact Gray and advise him to send a bill of sale to John Harvey.
Gray and MSA began negotiations regarding the purchase of Max and possibly other canines, although Gray claims that the parties did not come to terms. In March 2005, during the ongoing negotiations, Gray learned that Max’s sire had died, and thus he no longer had access *481 to Max’s pedigree for breeding purposes. On or about March 18, 2005, Gray contacted MSA, informed them that he could no longer sell Max as he was now needed for breeding, and requested that he be returned to him.
On or about April 1, 2005, Gray learned that MSA had neutered Max and were refusing to return him to Gray unless he signed a document releasing MSA from all claims. When Gray refused to sign the release, MSA refused to return Max. Gray avers that Max is still in the possession and control of MSA, despite the fact that they have never paid him for the canine. Gray further alleges that Max is currently deployed by MSA for duties at various sites, including Federal Plaza in New York City. Gray states that MSA unlawfully converted Max, and damaged him beyond repair by neutering him. Furthermore, Gray alleges that MSA has been unjustly enriched, by receiving in excess of $105,411.90 for Max’s services between March 4, 2005 and May 28, 2006.

DISCUSSION

MSA contends that summary judgment is appropriate because this Court cannot exercise personal jurisdiction over them, as the facts that Gray relies upon are grounded in New York, rather than Massachusetts. Furthermore, if the Court declines to dismiss this matter for lack of personal jurisdiction, MSA seeks summary judgment on Gray’s c. 93A claim on the grounds that the acts complained of do not constitute unfair and deceptive practices; and did not occur substantially and primarily within the Commonwealth as required under the statute.
I. Standard of Review Summary judgment is appropriate when the summary judgment record shows that “there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); DuPont v. Comm’r of Corr., 448 Mass. 389, 397 (2007). A fact is “material” if it would affect the outcome of the suit. Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is “genuine” where a reasonable finder of fact could return a verdict for the nonmoving party. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991), citing Anderson, 477 U.S. at 252. The moving party bears the initial burden of demonstrating the absence of a triable issue and that the summary judgment record entitles him to judgment as a matter of law. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002), citing Pederson v. Time, Inc., 404 Mass. 14, 17 (1989); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The moving party may satisfy its burden by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the non-moving party has no reasonable expectation of proving an essential element of his case at trial. Flesner, 410 Mass. at 809; Kourouvacilis, 410 Mass. at 716 (adopting reasoning contained in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), that “the burden on the moving party may be discharged by ‘showing’ . . . that there is an absence of evidence to support the nonmoving party’s case”). In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. Jupin v. Kask, 447 Mass. 141, 143 (2006), citing Coveney v. President & Trs. of the Coll. of the Holy Cross, 388 Mass. 16, 17 (1983); see Simplex Techs., Inc. v. Liberty Mut. Ins. Co., 429 Mass. 196, 197 (1999). If the moving party has carried its burden, and the plaintiff has not responded with specific facts to establish a genuine, triable issue, the court grants the motion for summary judgment. Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976); see Ng Bros., 436 Mass. at 644 (stating that, even where the facts are disputed, “summary judgment is still available if the party with the burden of proof at trial... fails to present in the summary judgment record, taking everything it says as true and drawing all reasonable inferences in its favor, sufficient facts to warrant a finding in its favor”), citing White v. Univ. of Mass. at Boston, 410 Mass. 553, 557 (1991).

H. Personal Jurisdiction under the LongArm Statute

Any assertion of personal jurisdiction over a nonresident requires a two-pronged analysis: (1) is the assertion of personal jurisdiction authorized by statute, and (2) if so authorized, does the exercise of jurisdiction under the State statute comport with the due process requirement of the United States Constitution. Lamarche v. Lussier, 65 Mass.App.Ct. 887, 892 (2006), quoting Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). “Whether jurisdiction may be permissibly asserted under the long-arm statute is dependent on the particular facts of the case.” Akinci-Unal v. Unal 64 Mass.App.Ct. 212, 216 (2005), citing Morill v. Tong, 390 Mass. 120, 129 (1983).
When presented with a motion to dismiss for lack of personal jurisdiction, “the plaintiff bears the burden of establishing sufficient facts on which to predicate jurisdiction over the defendant.” Balloon Bouquets, Inc. v. Balloon Telegram Delivery, Inc., 18 Mass.App.Ct. 935, 937 (1984), quoting Good Hope Indus., Inc., 378 Mass. at. 3. “A prima facie showing of facts sufficient to establish personal jurisdiction pursuant to the Massachusetts long-arm statute and due process requirements is usually sufficient to survive a motion to dismiss for lack of personal jurisdiction.” Cepeda v. Kass, 62 Mass.App.Ct. 732, 739 (2004).
A. G.L.c. 223A, §3(a)
A Massachusetts Court may gain jurisdiction over a non-resident defendant “when some basis for jurisdiction in the statute has been established.” Intech, Inc. v. Triple “C” Marine Salvage, Inc., 444 Mass. 122, 125 (2005). General laws c. 223A, §3(a) provides in pertinent part that,"[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person’s *482 (a) transacting any business in this commonwealth." The definition of “person” contained in the statute includes a corporation. See G.L.c. 223A, §1.
To satisfy the jurisdictional requirements under 3(a), Gray must allege facts that, (1) the defendant transacted business in Massachusetts, and (2) that the plaintiffs claim arose from the transaction of business by the defendant. Intech, Inc., 444 Mass. at 125, quoting Iatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). When reviewing the record to make a determination of jurisdiction, the Court is not limited to the four corners of the complaint, and may consider other documents, such as affidavits. See Mmoe v. Commonwealth, 393 Mass. 617, 620 (1985); Good Hope Industries, Inc., 378 Mass. at 3; Kleinerman v. Morse, 26 Mass.App.Ct. 819, 821 n.4 (1989).
The “transacting business” requirement is construed broadly and may be of a personal rather than a commercial nature. Id. While a single transaction within Massachusetts is generally insufficient to warrant a finding of jurisdiction, the purposeful and successful solicitation of business from residents of Massachusetts will usually suffice to satisfy the “transacting business” prong of the jurisdictional test. Id. at 768. See Gunner v. Elmwood Dodge, Inc., 24 Mass.App.Ct. 96 (1987) (Rhode Island automobile dealer’s dissemination, on apersistentbasis, of print and electronic advertising, aimed at cultivating market area in Massachusetts, was sufficient to constitute transacting business within meaning of long-arm statute, though dealer had no other contact with the Commonwealth); see also Connecticut Nat. Bank v. Hoover Treated Wood Products, Inc., 37 Mass.App.Ct. 231 (1994) (company’s shipping of goods to customer in state on 30 separate occasions during four-month period, with aggregate sales of more than $375,000, when supplier had no office, agents, or assets in state, and there was no allegation or evidence that it advertised there, nonetheless constituted “transacting business” under the long-arm statute); contrast Stanton v. AM General Corp., 50 Mass.App.Ct. 116 (2000) (non-resident manufacturer’s single purchase of parts from a Massachusetts company, which contracted with out-of-state shipper who hired a Massachusetts trucker to deliver the parts, did not constitute “doing business” under the long-arm statute).
Facts alleged by Gray that are relevant to the applicability of the long-arm statute are that: (1) John Harvey, a representative of MSA, telephoned Gray in Massachusetts for the purposes of purchasing an explosive detecting canine; (2) that Max was registered in Massachusetts; (3) that MSA had previously conducted business with Gray, purchasing two other dogs from Gray for the sum of $13,000; (4) that MSA regularly does and solicits business within Massachusetts, and has received approximately $500,000 to $600,000 from the state as a result; and (5) that MSA is registered in Massachusetts as a foreign corporation and has a resident agent.
Of particular significance is the deposition of George Harvey in which he admitted that MSA was doing business in Massachusetts. When asked what services MSA was providing in the Commonwealth, Harvey replied, “explosive detection canines, explosive screening, remote screening, and threat assessments.” Although Harvey stated that MSA did not have a place of business in Massachusetts, he admitted that there were certain locations in Massachusetts that MSA worked at.
All of these factors amply support a finding that MSA was transacting business within the meaning of G.L.c. 223A, §3(a). MSA could be found to be “transacting business" under Gunner, as a result of its solicitation of business in Massachusetts alone. Furthermore, the revenue that MSA derived from its business relationship with Massachusetts is enough to constitute a purposeful and successful solicitation of business from residents of Massachusetts, sufficient to satisfy the “transacting business” requirement. See Connecticut Nat. Bank, 37 Mass.App.Ct. at 234; Tatro, 416 Mass. at 767.
In Tatro, the Supreme Judicial Court held that the “arising from” language created a “but for” test, which meant that “a claim arises from a defendant’s transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State.” Id., 770-71. In this case the alleged conversion of Gray’s property certainly arose from MSA’s transaction of business within Massachusetts. Gray has demonstrated that MSA was transacting business, and that Gray’s claim arose from MSA’s transaction of business within Massachusetts. As such, this Court can exercise personal jurisdiction over MSA pursuant to G.L.c. 223A, §3(a).

B. G.L.c. 223A, §3(d)

The Court may also exercise personal jurisdiction over MSA pursuant to G.L.c. 223A, §3(d). Under this section of the statute, personal jurisdiction may be exercised over a defendant if he:
caus[es] tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth;
G.L.c. 223A, §3(d). In order to satisfy section 3(d), Gray must have alleged facts which show that, (1) Gray suffered a tortious injury in Massachusetts arising out of MSA’s out-of-state conduct, and (2) MSA regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth. See Heins v. Wilhelm Loh Wetzlar Optical Machinery GmbH & Co. KG., 26 Mass.App.Ct. 14, 19 (1988).
Gray has pled sufficient facts which show that he suffered a tortious injury in Massachusetts, as a result of MSA’s out of state conduct. Specifically, Gray claims *483 that MSA committed the torts of conversion, restitution, unjust enrichment/quantum meruit, and c. 93A violations in refusing to return Max when a sale price had not been agreed, and by neutering the canine while it was in their possession. As has already been established in the jurisdictional analysis under 3(a), Gray has demonstrated that MSA regularly does or solicits business in Massachusetts. As such, Gray has provided “literal satisfaction of the explicit statutory requirements to support the assertion of jurisdiction.” Id. at 20.
C. Due Process
While the Court has found that Gray has met their burden under G.L.c. 223A, §§3(a) and (d), Gray is still required to meet the constitutional requirements of due process. Lamarche, 65 Mass.App.Ct. at 892-93. “The Due Process Clause protects an individual’s liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful ‘contacts, ties, or relations.’ ” Heins, 26 Mass.App.Ct. at 21, quoting International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945). The Due Process Clause “gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.” Reins, 26 Mass.App.Ct. at 21, quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).
The requirement of fair warning to an out-of-state defendant is satisfied when he has “purposefully directed” his activities at residents in the forum state, Heins, 26 Mass.App.Ct. at 22, quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984), and the resulting litigation stems “from alleged injuries that ‘arise out of or relate to’ those activities.” Heins, 26 Mass.App.Ct. at 22, quoting Helicópteros Nacionales de Colombia, S.A. v. Hall 466 U.S. 408, 414 (1984). “Thus ‘the forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State’ and those products subsequently injure forum consumers.” Heins, 26 Mass.App.Ct. at 22, quoting World-Wide Volkswagen Corp., 444 U.S. at 297-98. The Massachusetts long-arm statute allows jurisdiction to be exercised to the limits allowed by the United States Constitution. Lamarche, 65 Mass.App.Ct. at 892; Automatic Sprinkler Corp. of America v. Seneca Foods Corp., 361 Mass. 441, 443 (1972).
Only if MSA, “has such minimum contacts with the state ‘that the maintenance of the suit does not offend traditional notions of fair play and justice,’ ” or has “purposefully avail(ed) itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,” may the forum state permissibly use its long-arm statute within due process. Good Hope Industries, Inc., 378 Mass. at 7, quoting International Shoe, Co., 326 U.S. at 316; Hanson v. Denckla, 357 U.S. 235, 253 (1958). As such, it is the Court’s duty to inquire, “whether there was some minimum contact with the Commonwealth which resulted from an affirmative, intentional act of the defendant, such that it is fair and reasonable to require the defendant to come into the State to defend the action.” Good Hope Industries, Inc., 378 Mass. at 7.
In Sonesta Intern. Hotel Corp. v. Central Florida Investments, Inc., the Appeals Court permitted the exercise of personal jurisdiction in a licensor’s suit for breach of contract and unfair practices. 47 Mass.App.Ct. 154 (1999). The Court found that a Florida hotel’s contacts with Massachusetts in connection with its use of a trade name it had licensed from a Massachusetts-based company satisfied the Massachusetts long-arm statute, and constitutional due process requirements. Id. at 160-63. The hotel had initiated the parties’ relationship by facsimile transmission to the licensor’s offices, and the relationship contemplated the licensor’s ongoing performance in Massachusetts of marketing services. Id The hotel was also obligated to make periodic payments to and have other contacts with the licensor, and it had other non-Florida business activities. Id.
Similarly, in Heins, the Appeals Court held that the exercise of long-arm jurisdiction by a Massachusetts court over a West German manufacturer in a suit brought by an injured worker, where the manufacture had solicited business in the Commonwealth, and derived substantial revenue from machines sold in the State, did not violate the due process clause. 26 Mass.App.Ct. at 27. The Court found it persuasive that the manufacturer was aware that its products had been purchased by Massachusetts customers for use in the Commonwealth, that dozens of the manufacturer’s machines were in use in the forum State, and that the manufacturer sent employees to Massachusetts to visit existing or prospective customers at three different companies. Id. at 25-27. Compare Intech, Inc., 444 Mass. at 127 (no jurisdiction when company engaged in two isolated transactions devoid of purposeful intent on defendant’s part to avail itself of the privilege of conducting activities within forum state); Stanton, 50 Mass.App.Ct. at 121 (no personal jurisdiction when non-resident manufacturer made single purchase of parts from a Massachusetts corporation, as manufacturer had not purposefully availed itself of conducting activities within forum state).
The facts alleged by Gray are more akin to Sonesta and Heins than to Intech or Stanton. Gray has alleged facts that show that MSA regularly solicits and carries out business in Massachusetts. Moreover, rather than engaging in one or two isolated and minor transactions with a company in the forum state, Gray has also alleged facts which demonstrate that MSA was involved in a series of transactions in Massachusetts from which it derived substantial revenue. Indeed, several of the facts cited earlier by Gray demonstrate *484 specifically this factor of the generation of revenue by MSA resulting from activity within the Commonwealth. As such, the exercise of jurisdiction under the long-arm statute comports with the due process requirement of the United States Constitution as MSA has “purposefully avail[ed] itself of the privilege of conducting activities within [Massachusetts].” Tatro, 416 Mass. at 772; Stanton, 50 Mass.App.Ct at 121.
For the aforementioned reasons, this Court may exert personal jurisdiction over Defendant MSA.

III. Chapter 93A Claim

MSA claims that it is entitled to summary judgment on Gray’s c. 93A claim because, 1) MSA’s conduct does not rise to the level of an unfair and deceptive trade practice within the meaning of the statute, and 2) the actions and transactions constituting the alleged unfair method of competition or unfair and deceptive act or practice occurred primarily and substantially outside Massachusetts.

A. Unfair and Deceptive

It is well established that a violation of G.L.c. 93A, §11 need not be based “on a violation of an independent common law or statutory duty.” Massachusetts Farm Bureau Federation, Inc. v. Blue Cross of Massachusetts, Inc., 403 Mass. 722, 729 (1989). Conduct is also unfair under c. 93A if the act lies “within ‘at least the penumbra of some common law, statutory or other established concept of unfairness . . . [or] is immoral, unethical, oppressive or unscrupulous.’ ” Id., quoting Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 503-04 (1979). “Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a [G.L.] c. 93A violation is a question of law.” Chervin v. Travelers Ins. Co., 448 Mass. 95, 112 (2006).
Gray has alleged in the Verified Complaint that MSA engaged in unfair and deceptive trade and business practices, by committing the torts of conversion, restitution and unjust enrichment/quantum meruit. These torts clearly support a c. 93A claim, and contrary to MSA’s assertions, rise to the level of an unfair and deceptive trade practice under the statute. See Massachusetts Farm Bureau Federation, Inc., 403 Mass. at 729.

B. Conduct “Primarily and Substantially" within the Commonwealth

As noted by MSA, it is required that the unfair or deceptive act occur “primarily and substantially within the Commonwealth.” G.L.c. 93A, §11.[4] The burden of proof is upon the person claiming that the transaction did not occur primarily and substantially within the Commonwealth. Id. In Kuwaiti Danish Computer Co. v. Digital Equipment Corp., the Supreme Judicial Court stated that “whether the ‘actions and transactions occurred primarily and substantially within the commonwealth’ is not a determination that can be reduced to any precise formula.” 438 Mass. 459, 472 (2003). However the SJC concluded that a court, “after making findings of fact, and after considering those findings in the context of the entire §11 claim, [should] determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth.” Id. at 472. “This would include, but not be limited to, looking at the place of conduct and the ‘situs of loss.’ ” Auto Shine Car Wash Systems, Inc. v. Nice “N Clean Car, 58 Mass.App.Ct. 685, 689 (2003), quoting Kuwaiti Danish Computer Co., 438 Mass. at 472, n. 13.
Viewing the facts in the light most favorable to Gray, it cannot be said that MSA has carried its burden of showing that is entitled to judgment as a matter of law on Gray’s c. 93A claim. Gray, has alleged that he was solicited in Massachusetts by MSA, and that Max was registered in Massachusetts under a kennel permit. In addition Gray was in Massachusetts when he demanded the return of Max, and MSA contacted him in the Commonwealth in order to try and get him to sign, a release before they returned Max. The “situs of the loss” is also in Massachusetts, as Gray has resided in state at all times relevant to this litigation, and alleges that he was never compensated for the loss of his property. In conclusion, the “center of gravity” of the claim is Massachusetts. See Auto Shine Car Wash Sytems, Inc., 58 Mass.App.Ct. at 689 (when deceptive letter and resulting harm occurred in Massachusetts, “center of gravity” of plaintiffs’ c. 93A claims were primarily and substantially in the Commonwealth); Compare, Bushkin Associates, Inc. v. Raytheon Co., 393 Mass. 622, 637-39 (alleged misrepresentations occurred in Massachusetts, but were received and acted upon in New York, where resulting harm occurred). Therefore, summary judgment on Gray’s c.93A claim would not be appropriate.

ORDER

Based upon the foregoing, it is hereby ORDERED that Defendant MSA’S Motion for Summary Judgment is hereby DENIED.

 Gray’s Memorandum of Law in Opposition states that Max was sent to New York on August 25, 2005 (Page 3, ¶7), contrary to the Verified Complaint which states the relevant date, as August 25, 2004. (See Verified Complaint, ¶4.)

Between October 1, 2004, and January 15, 2005, Max was in the possession of Davis, who later became an MSA employee.

There was also a possibility that Max would be purchased by CSS Certified Canine (“CSS”), a New York corporation that merged with MSA to provide canine services.

G.L.c. 93A, §11 provides in pertinent part:
No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth. For the purposes of this paragraph, the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth.