58 Mass. App. Ct. 685 (2003)                                    685

Auto Shine Car Wash Systems, Inc. *v.* Nice 'N Clean Car Wash, Inc.

# Auto Shine Car Wash Systems, Inc. & another[1] *vs.* Nice 'N Clean Car Wash, Inc.[2]

No. 00-P-1927.

Plymouth. September 13, 2002. - July 31, 2003.

Present: Rapoza, Kass, & Mills, JJ.

*Consumer Protection Act,* Businessman's claim, Unfair or deceptive act, Damages. *Damages,* Loss of profits.

In an action in which it was alleged that the defendant had deliberately induced the plaintiffs, by way of false pretenses, to cancel a pending sale of a car wash system and return a deposit while the defendant arranged for the purchase of similar equipment from the plaintiffs' competitor, which conduct the plaintiffs claimed amounted to a deceptive and unfair practice in violation of G. L. c. 93A, §§ 2, 11, the judge correctly determined that the "center of gravity" of the plaintiffs' c. 93A claim was primarily and substantially within the Commonwealth; consequently, the judge correctly rejected the defendant's contention that it was exempt from liability under c. 93A. [688-689]

In an action pursuant to G. L. c. 93A, the judge did not abuse his discretion in imposing double damages where, based on his findings, he had a sound basis for doing so. [689-690]

In awarding lost profit damages against the defendant buyer in an action arising from an aborted purchase of car wash system equipment, the judge properly decided not to allow the defendant credit for the plaintiff manufacturer's resale of the equipment to a second buyer, where the defendant's breach caused the manufacturer an over-all decrease in its sales of car wash equipment. [690-691]

Civil action commenced in the Superior Court Department on November 16, 1998.

The case was heard by *Patrick F. Brady*, J.

*James M. Hughes* for the defendant.

*Jack Bryan Little* for the plaintiffs.

---

[1]Belanger, Inc.

[2]We use the spelling of the defendant's name that the parties use on appeal, rather than as it appears on the complaint.

RAPOZA, J. This appeal arises from the aborted sale of car wash system equipment intended for use at a facility located in Somerset. The equipment was manufactured by the plaintiff, Belanger, Inc. (Belanger), and sold by the coplaintiff, Auto Shine Car Wash Systems, Inc. (Auto Shine), to the defendant, Nice 'N Clean Car Wash, Inc. (Nice 'N Clean).

Apart from breach of contract and misrepresentation claims, the plaintiffs allege that Nice 'N Clean deliberately induced Auto Shine, by way of false pretenses, to cancel the sale and return a deposit of $53,750 while Nice 'N Clean arranged for the purchase of similar equipment from a competitor. This conduct, the plaintiffs claim, amounted to a deceptive and unfair practice in violation of G. L. c. 93A, §§ 2 and 11. After a jury-waived trial, the judge found for the plaintiffs on all counts[3] and awarded double damages on the c. 93A claim.

In this appeal, Nice 'N Clean quarrels principally with the c. 93A aspect of the judgment, claiming error in the judge's (1) determination that the conduct complained of occurred "primarily and substantially" within the Commonwealth; (2) imposition of double damages; and (3) award of lost profit damages to Belanger.

*Background.* We recite the judge's pertinent factual findings, which we accept absent clear error.[4] See *Clegg* v. *Butler*, 424 Mass. 413, 420 (1997); *Kuwaiti Danish Computer Co.* v. *Digital Equip. Corp.*, 438 Mass. 459, 470 (2003). Auto Shine, a New Hampshire corporation, sells and services car wash system equipment manufactured by Belanger, a Michigan corporation. Nice 'N Clean is a Massachusetts corporation that owns and operates car wash facilities within the Commonwealth.

On May 2, 1997, Auto Shine and Nice 'N Clean entered into a written contract for the purchase and sale of a Belanger manufactured car wash system for Nice 'N Clean's facility in

---

[3]The judge also found for the plaintiffs on Nice 'N Clean's counterclaim, which was based on a theory that defects in the car wash equipment that Nice 'N Clean had previously purchased from Belanger and installed at its West Bridgewater facility not only furnished Nice 'N Clean grounds to withdraw from the new sale, see G. L. c. 106, § 2-609, but also gave rise to an independent claim for damages. Nice 'N Clean does not appeal that ruling.

[4]Nice 'N Clean does not argue that any of the judge's findings of fact are clearly erroneous, including those findings supporting the claim of misrepresentation.

Somerset. The agreed sale price was $240,000. Nice 'N Clean paid a partial deposit of $1,000 when it signed the contract and five months later, on October 3, 1997, it paid an additional sum of $52,750. The balance of the contract price was due on delivery of the equipment, which was scheduled for December 19, 1997.

Nice 'N Clean first stalled delivery on December 12, 1997, with a request for a delay in shipment, claiming that its Somerset facility would not be ready for approximately one month. Thereafter, there were further postponements at Nice 'N Clean's request. Eventually, by letter dated March 4, 1998, Nice 'N Clean asked for a full refund of its $53,750 deposit. As justification, Nice 'N Clean cited problems it purportedly had experienced with Belanger equipment at its West Bridgewater car wash facility.

The refund request prompted a meeting on March 24, 1998, in West Bridgewater, between representatives of Auto Shine, Belanger, and Nice 'N Clean. That meeting led to Auto Shine's promise to correct any existing problems with equipment at the West Bridgewater location, even though the equipment was outside the warranty period.[5] The parties also agreed to go forward with the delivery of the Belanger equipment for the Somerset facility. Nice 'N Clean made no mention of any other issue that might delay its acceptance of the equipment.[6]

Less than three months later, by a letter dated June 15, 1998, Nice 'N Clean changed course once again and represented to Auto Shine that it could not proceed with the sale, alleging that "legal issues" had arisen with an abutter of the Somerset facility. Nice 'N Clean asserted that it would be unable "to resolve this matter in the near future," and again requested a full refund of its deposit. Unbeknownst to Auto Shine, there was no pending legal dispute involving a neighbor of the car wash. Relying on Nice 'N Clean's representations, however, Auto Shine acquiesced and returned the $53,750 deposit, not knowing that Nice 'N Clean had recently purchased equipment from another supplier and installed it at the Somerset location.

[5] Auto Shine fulfilled that promise.

[6] These points were apparently memorialized in an April 9, 1998, letter from Belanger to Nice 'N Clean, which was admitted in evidence as exhibit 14. The record on appeal, however, does not contain that document.

1. *General Laws c. 93A, § 11.* The judge's ruling, under G. L. c. 93A, § 11,[7] that the Commonwealth was the locus of the c. 93A violation, presents a question of law for plenary review. *Kuwaiti Danish Computer Co.* v. *Digital Equip. Corp.*, 438 Mass. at 470. *Sonesta Intl. Hotels Corp.* v. *Central Fla. Invs., Inc.*, 47 Mass. App. Ct. 154, 158 (1999). Prior to *Kuwaiti Danish Computer Co.* v. *Digital Equip. Co.*, 438 Mass. 459, decided after trial in this case, Massachusetts generally followed the "functional approach" to determine whether actions or transactions constituting a § 11 claim occurred "primarily and substantially within the commonwealth." G. L. c. 93A, § 11, as amended by St. 1986, c. 363, § 4. See *Makino, U.S.A., Inc.* v. *Metlife Capital Credit Corp.*, 25 Mass. App. Ct. 302, 308-311 (1988). See also *Bushkin Assocs., Inc.* v. *Raytheon Co.*, 393 Mass. 622, 638-639 (1985); *Sonesta Intl. Hotels Corp.* v. *Central Fla. Invs., Inc.*, 47 Mass. App. Ct. at 159. Under that test, the issue is where the pertinent contacts — "the actions and transactions complained about" — occurred. *Makino, U.S.A., Inc.* v. *Metlife Capital Credit Corp.*, 25 Mass. App. Ct. at 311. At the same time, Massachusetts has not followed the "transactional analysis" test under which judges "analyze all aspects of the parties' relationship to determine which State had the greatest contact with that relationship." *Goldstein Oil Co.* v. *C.K. Smith Co.*, 20 Mass. App. Ct. 243, 250 n.8 (1985).

In the present matter, the judge appropriately employed the "functional approach," ruling that most, if not all, of the pertinent contacts were in Massachusetts: the contract was to be performed in Massachusetts; the parties met "frequently" in Massachusetts; the alleged problems with equipment that Nice 'N Clean had previously procured from Belanger occurred in Massachusetts; and the misrepresentation inducing the return of the deposit originated in Massachusetts. Accordingly, the judge concluded, § 11 applied to the circumstances pertaining to Nice

---

[7]In part, G. L. c. 93A, § 11, provides as follows: "No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth. For purposes of this paragraph, the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth."

'N Clean's conduct, and the c. 93A violation occurred "primarily and substantially" within the Commonwealth.

Since the time of trial and oral argument, however, the Supreme Judicial Court, although not rejecting outright the *Makino* approach employed by the judge below, has stated that the analysis required under § 11 should focus on the context of the entire § 11 claim and "whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." *Kuwaiti Danish Computer Co.* v. *Digital Equip. Corp.*, 438 Mass. at 473. See *Makino, U.S.A., Inc.* v. *Metlife Capital Credit Corp.*, 25 Mass. App. Ct. at 311. This would include, but not be limited to, looking at the place of conduct and the "situs of loss." *Kuwaiti Danish Computer Co.* v. *Digital Equip. Corp., supra* at 472 n.13. In any event, whether a § 11 claim occurred primarily and substantially within the Commonwealth "is not a determination that can be reduced to any precise formula." *Id.* at 472.

Turning to the trial judge's analysis, we conclude that he reached the correct result on the facts found and that the result would be the same regardless of which analytical standard is applied. Crucial to the judge's decision were his findings that the deception and resulting harm that form the basis of the § 11 claim both occurred in Massachusetts. On June 15, 1998, Nice 'N Clean faxed, from its West Bridgewater site, a letter containing the misrepresentation that ultimately induced a refund from Auto Shine. The result for both plaintiffs was a loss of business within the Commonwealth. Contrast *Bushkin Assocs., Inc.* v. *Raytheon Co.*, 393 Mass. at 637-639 (alleged misrepresentations occurred in Massachusetts, but were received and acted upon in New York, where resulting harm occurred). Thus, as the "center of gravity" of the plaintiffs' c. 93A claim was primarily and substantially within the Commonwealth, the judge was correct in rejecting Nice 'N Clean's contention that it was exempt from liability under c. 93A.

2. *Multiplication of damages.* The judge determined that Nice 'N Clean's professed reason for its refund request was a wilful and knowing misrepresentation that induced the plaintiffs to cancel the order and refund the deposit. In its June 15, 1998,

letter to Auto Shine, Nice 'N Clean claimed to be in the midst of untangling legal issues with an abutter and hoped to "re-work the equipment deal at a later date." In truth, apart from whatever zoning problems it may have been experiencing, approximately one month before its request Nice 'N Clean had already ordered similar, although less expensive, machinery for its Somerset facility from the plaintiffs' competitor. That system was installed some time in June, 1998. Had the plaintiffs known of Nice 'N Clean's purchase, they would not have returned the deposit.

Based on these findings, the judge could reasonably have inferred that Nice 'N Clean did not intend to "re-work" the deal with the plaintiffs as it had claimed and, thus, properly concluded that Nice 'N Clean's conduct amounted to a wilful and knowing violation of c. 93A. There was, therefore, a sound basis for double damages, and their imposition did not constitute an abuse of discretion. See *Kattar* v. *Demoulas*, 433 Mass. 1, 15-16 (2000), and cases cited.

3. *Lost profit damages.* Pursuant to G. L. c. 106, § 2-708(2),[8] the judge awarded Belanger damages for its lost profit ($87,968.58) from the Somerset transaction. He did so even though he found that Belanger had resold the equipment to another buyer after the breach. The narrow question is whether the judge erred in not crediting the proceeds of the resale against Belanger's claimed damages, as is suggested by the last clause of § 2-708(2) ("due credit for payments or proceeds of resale").

The limiting case for such a credit to the buyer is when the vendor is a "lost volume seller," defined as "one who had there been no breach by the buyer, could and would have had the benefit of both the original contract and the resale contract." *Teradyne, Inc.* v. *Teledyne Indus., Inc.*, 676 F.2d 865, 868 & n.2

---

[8]That subsection provides as follows: "If the measure of damages provided in [§ 2-708(1)] is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this Article [§ 2-710], due allowance for costs reasonably incurred and due credit for payments or proceeds of resale."

(1st Cir. 1982).[9] The trial judge found that Belanger was a lost volume seller and there is support for his finding in the record. The *Teradyne* case holds that "it is universally agreed that in a case where after the buyer's default a seller resells the goods, *the proceeds of the sale are not to be credited to the buyer if the seller is a lost volume seller*" (emphasis supplied). *Id.* at 868. See White & Summers, Uniform Commercial Code § 7-9 (4th ed. 1995 & Supp. 2002). Nice 'N Clean is not entitled to a credit based on the resale by Belanger because Belanger is a lost volume seller.

Nice 'N Clean's assertion that no reported Massachusetts appellate decision has adopted the reasoning of *Teradyne* is overdrawn. Although the issue has not been squarely addressed, cf. *Jericho Sash & Door Co.* v. *Building Erectors, Inc.*, 362 Mass. 871 (1972) (applying G. L. c. 106, § 2-708[2]); *Cesco Mfg. Corp.* v. *Norcross, Inc.*, 7 Mass. App. Ct. 837, 842-843 (1979) (same), there is no reason to question or reject the rationale of *Teradyne*. "Remedies under the Uniform Commercial Code are to be construed liberally so that the aggrieved party is placed in the same position as if the contract was performed." *Delano Growers' Coop. Winery* v. *Supreme Wine Co.*, 393 Mass. 666, 678 n.5 (1985). Here, where Nice 'N Clean's breach caused Belanger an over-all decrease in its sales of car wash equipment, the judge's decision not to allow Nice 'N Clean credit for Belanger's resale to a second buyer comports with those principles.

*Judgment affirmed.*

---

[9]The term "lost volume seller" is not elucidated in our case law. An oft-cited formulation is found in *Storage Technology Corp.* v. *Trust Co. of N.J.*, 842 F.2d 54, 56 n.2 (3d Cir. 1988), quoting from White & Summers, Uniform Commercial Code § 7-9, at 275 (2d ed. 1980): "A lost volume seller is one who upon a buyer's breach of contract, resells the article to a second purchaser at the price agreed to by the first purchaser. The second purchaser, however, would have purchased a similar article notwithstanding the first purchaser's breach. Under such circumstances, when the seller resells the article, he is still not made whole because 'he will have lost one sale, one profit, over the course of the year.' "